United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 01, 2026

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | § |
|  | § Chapter 11 |
|  | § |
| LURIN REAL ESTATE HOLDINGS XXI, LLC, *et al.* | § Case No. 26-90344 (ARP) |
|  | § |
|  | § (Jointly Administered) |
| Debtors.[1] | § |
|  | § |
|  | § |
|  | § |

**AGREED INTERIM ORDER: (I) AUTHORIZING
THE ESTATES AT PALM BAY DEBTOR TO USE
CASH COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION;
(III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A
FINAL HEARING; AND (V) GRANTING RELATED RELIEF**
[Relates to Docket No. 466]

Upon the *Estates at Palm Bay Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Providing Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Motion")[2] of Debtor Lurin Real Estate Holdings VI, LLC (the "EPB Debtor") in the above-captioned cases, and this Court having considered the Motion, the exhibits attached thereto, the Round 5 Declaration, the evidence submitted, and the record made at the hearing held before this Court (the "Interim Cash Collateral Hearing"), and due, proper and sufficient notice of the Motion, having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d) and 9014, Local Rules 2002-1,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Lurin/Home-Index. The location of the Debtors' service address is: 2101 Cedar Springs, Suite 1050, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

18449892

4001-1(a), 4001-1(b), and 9013-1 and the Procedures for Complex Cases in the Southern District of Texas; and the Interim Cash Collateral Hearing to consider the relief requested in the Motion having been held and concluded, and the offer of proof having been accepted into evidence at such Interim Cash Collateral Hearing; and U.S. Bank Trust Company, National Association, as Trustee for the Benefit of the Registered Holders of BBCMS Mortgage Trust 2024-5C29, Commercial Mortgage Securities, Commercial Mortgage Pass-Through Certificates, Series 2024-5C29 ("U.S. Bank" or the "Prepetition Secured Party") consenting to entry of this Interim Order, and it appearing to this Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the EPB Debtor and its estate (as defined under Bankruptcy Code section 541, the "Estate"), and otherwise is fair and reasonable and in the best interests of the EPB Debtor, its Estate, and its creditors and equity holders, and is essential for the continued operation of the EPB Debtor's business; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Jurisdiction and Venue**. This Court has jurisdiction over the Chapter 11 Case (as defined below), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the Chapter 11 Case and the proceedings on the Motion is proper before this Court under 28 U.S.C. § 1408. The predicates for the relief set forth herein are sections 105(a),

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

18449892

361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Bankruptcy Local Rules 4001-1 and 9013-1.

B.    **Petition Date**. On June 3, 2026 (the "Petition Date"), the EPB Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing this chapter 11 case (the "Chapter 11 Case").

C.    **Debtor in Possession**. The EPB Debtor continues to manage and operate its business and property as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On May 5, 2026, the U.S. Trustee appointed a three-member official committee of unsecured creditors (the "Committee") as to the cases that were filed as of that date [Docket No. 265].

D.    **EPB Property**. Subject to the Challenge Period (as defined below), the EPB Debtor owns and holds a leasehold interest (the "Leasehold Estate") in the real property located at 302 Blessinger Drive, Fort Walton Beach, Okaloosa County, Florida 32547 (the "Land"), which EPB Debtor leases from the UNITED STATES OF AMERICA, acting by and through the Secretary of the Air Force (the "U.S. Government") pursuant to that certain Amended and Restated Department of the Air Force Lease of Federal Land, Hurlburt Field, Florida, dated March 14, 2019, between the U.S. Government, as lessor, and Borrower, as lessee (the "Original Ground Lease"), as amended by that certain First Amendment to Amended and Restated Department of the Air Force Lease of Federal Land dated June 9, 2022 (the "Amended Ground Lease") (the Original Ground Lease and Amended Ground Lease, collectively, the "Ground Lease"). The Land and improvements located thereon, including the hereinafter defined "EPB Personal Property," are hereinafter referred to as

3

18449892

the "EPB Property." The legal description of the EPB Property is attached hereto as **Exhibit A** and incorporated herein by reference.

E.      **Single Asset Real Estate Case**. The EPB Debtor's case is a "single asset real estate" case as defined in 11 U.S.C. § 101(51B).

F.      **Notice**. In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and Local Rule 2002-1, notice of the Interim Cash Collateral Hearing and the emergency relief requested in the Motion has been provided by the EPB Debtor to the Notice Parties (as defined in the Motion) as set forth therein. Under the circumstances, the notice given by the EPB Debtor of the Motion, the relief requested herein, and the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and Local Rule 2002-1.

G.      **Necessity of Relief Requested**. The EPB Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Bankruptcy Local Rules 4001-1, 4002-1, and 9013-1, and good cause has been shown for entry of this Interim Order. The EPB Debtor would not have sufficient available sources of capital to operate its business in the ordinary course or to maintain its property without the use of Cash Collateral. Without access to, and the ability to use Cash Collateral, the EPB Debtor's ability to manage, administer and preserve its Estate would be immediately and irreparably harmed, thereby materially impairing its Estate and creditors and the likelihood of a successful outcome in this Chapter 11 Case.

H.      **Rents**. Prior to, on and after the Petition Date, the EPB Debtor has received and collected, and continues to receive and collect, rents, issues, proceeds, profits, accounts

4

18449892

receivable, (collectively, the "Rents") arising from the EPB Property. The Rents constitute cash collateral of U.S. Bank within the meaning of section 363(a) of the Bankruptcy Code.

   **I.**      **The EPB Debtor's Request to Use Cash Collateral**. The EPB Debtor requests the use of its respective Rents and all other income received, including, but not limited to, all: (a) cash; and (b) cash equivalents, whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, or in any other form, which represent income, proceeds, products, rents or profits of the Prepetition Collateral (as defined below), whether on hand as of the Petition Date or collected thereafter, and all other "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (collectively, the "Cash Collateral") in order to operate such the EPB Property, provide services to tenants of the EPB Property, administer the EPB Debtor's chapter 11 case and pursue a sale of the EPB Property.

   **J.**      **Prepetition Collateral**. Subject to the Challenge Period, U.S. Bank has a first-position lien on, and security interest in (the "EPB Prepetition Liens") the EPB Property, including the Cash Collateral, pursuant to the following instruments, loan documents and assignment documents (collectively, the "EPB Loan Documents"), as more fully described in the EPB Loan Documents (the "EPB Prepetition Collateral"), which shall be subject and subordinate to the Carve Out (as defined below):

   a. Consolidated Renewal Promissory Note Including Future Advance dated August 14, 2024, in the original stated principal amount of $61,000,000.00, including all allonges thereto;

   b. Amended and Restated Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing and Note and Mortgage

18449892

Modification Agreement Evidencing Consolidated Renewal Promissory Note Including Future Advance dated August 14, 2024, and recorded in the Official Records of Okaloosa County, Florida (the "Official Records") on August 15, 2024, as Doc. # 3705431;

c. Loan Agreement dated as of August 14, 2024;

d. Cash Management Agreement dated as of August 14, 2024;

e. Deposit Account Control Agreement (Hard with Active Sweep to Borrower) dated as of August 14, 2024;

f. Assignment of Management Agreement and Subordination of Management Fees dated August 14, 2024;

g. UCC-1 Financing Statement filed with the Delaware Department of State (the "DDS") on August 14, 2024, and assigned Initial Filing No. 20245601271 (the "State UCC-1") and UCC-1 Financing Statement recorded in the Official Records on August 15, 2024 as Doc. # 3705432 (the "County UCC-1") (collectively, the "UCC-1s");

h. Assignment of Mortgage and Omnibus Assignment of Loan Documents and Allonge effective as of August 14, 2024;

i. Assignment of Mortgage and Omnibus Assignment of Loan Documents and Allonge dated effective as of August 14, 2024;

j. Assignment of Amended and Restated Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing and Note and Mortgage Modification Agreement Evidencing Consolidated Renewal Promissory Note Including Future Advance

6

effective September 27, 2024, dated November 5, 2024, and recorded in the Official Records on January 24, 2025, as Doc. # 3733461;

k. General Assignment to U.S. Bank executed on September 27, 2024; and

l. UCC-3 Financing Statement Amendment filed with the DDS on January 17, 2025 as Amendment No. 20250356383 (the "State UCC-3"), and a UCC-3 Financing Statement Amendment recorded in the Official Records on January 24, 2025 as Doc. # 3733462 (the "County UCC-3") (collectively, the "UCC-3s").

**K.**     **EPB Prepetition Indebtedness**.  The EPB Debtor acknowledges that, as of the Petition Date, the EPB Debtor is indebted to U.S. Bank pursuant to the EPB Loan Documents in amount of no less than $61,000,000, plus default interest, legal fees, yield maintenance premiums, and other charges allowable pursuant to the EPB Loan Documents and applicable law (collectively, the "EPB Prepetition Indebtedness").

**L.**     **Post-Petition Amounts**. U.S. Bank also asserts claims under the EPB Loan Documents against the EPB Debtor relating to postpetition interest, costs, attorneys' fees, yield maintenance premiums and any and all other amounts to the extent permitted by the Bankruptcy Code and applicable law. Subject to the Bankruptcy Code and any orders entered by this Court, U.S. Bank reserves all rights to collect such amounts from the EPB Debtor notwithstanding any provisions set forth in this Interim Order.

**M.**     **Cash Collateral**. For purposes of this Interim Order, the term "Cash Collateral" shall be deemed to include, without limitation, all of the EPB Debtor's "Cash Collateral" as defined under section 363 of the Bankruptcy Code, in which the Prepetition Secured Party has a valid, perfected security interest, lien, or mortgage as of the Petition

18449892

Date and postpetition proceeds, products, offspring, or profits thereof to the extent provided in the EPB Loan Documents (as may or have been amended, supplemented, or modified from time to time, and together with all promissory notes, security agreements, deeds of trust, and all other documents creating, governing, evidencing, and/or securing the Prepetition Loan Obligations).

N.      **Need for Immediate Entry of this Interim Order**. The EPB Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the EPB Debtor and its Estate and creditors.

**BASED UPON THE FOREGOING IT IS ORDERED AS FOLLOWS:[4]**

1.      **Motion Approved as Provided Herein**. The Motion is granted solely on an interim basis in accordance with the terms of this Interim Order, and the use of Cash Collateral is authorized subject to the terms of this Interim Order. All objections to and reservations of rights with respect to the Motion and to the entry of this Interim Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety, provided however, that all objections and rights are preserved for consideration at a final hearing on the Motion.

2.      **DIP Account**. The EPB Debtor shall deposit all of its Cash Collateral into the EPB Debtor's debtor-in-possession operating account at a depository approved by the United States Trustee (the "DIP Account") and shall pay all of its expenses as authorized herein using the DIP Account.

---

[4] This order shall hereafter be referred to as the "Interim Order."

18449892

3. **Approved Budget**. Pursuant to section 363 of the Bankruptcy Code, the EPB Debtor may use Cash Collateral only to pay reasonable and necessary postpetition operating expenses for the EPB Property (excluding capital improvements for the EPB Property and extraordinary maintenance expenses) and certain chapter 11 administrative expenses solely as set forth in the Budget attached as **Exhibit B** (the "Budget") (subject to the Permitted Variances, as defined below) and to pay other expenses expressly authorized by U.S. Bank in writing. The EPB Debtor shall not exceed the aggregate disbursement in the Budget by more than ten percent (10%) (the "Permitted Variances"). Commencing on July 10, 2026, and each Friday thereafter, the EPB Debtor shall provide U.S. Bank and the Committee with a variance report comparing actual expenditures to the Budgeted amounts and identifying any variances therefrom for the prior four-week period. The Budget may not be amended, modified, supplemented, or extended without the prior written consent of U.S. Bank, in its sole discretion.

4. **Insider Payments**. The EPB Debtor shall not make any payments to an "Insider," as that term is defined in Section 101(31) of the Bankruptcy Code, other than as necessary to effectuate payments to non-Insiders permitted in the Interim Budget. For purposes of clarity, the definition of Insider includes Lurin Property Management, LLC, a Delaware limited liability company ("Lurin Manager").

5. **Adequate Protection for Prepetition Secured Party**. As adequate protection for the interests of U.S. Bank in the EPB Property and the Cash Collateral pursuant to sections 361, 363(c) and 363(e) of the Bankruptcy Code, and in consideration of the EPB Debtor's use thereof, and the imposition of the automatic stay:

18449892

(a)     Ground Lease Payments. As required by 11 U.S.C. § 365(d)(3), the EPB Debtor shall timely perform all obligations under Ground Lease arising from and after the Petition Date, including, without limitation, timely payment of all postpetition rent due to the U.S. Government under the Ground Lease. Provided, however, nothing herein shall prohibit the EPB Debtor from filing a motion seeking to extend the time for performance of any such obligation that arises within 60 days after the Petition Date as contemplated by 11 U.S.C. § 365(d)(3).

(b)     Financial Reports. The EPB Debtor shall provide to U.S. Bank a copy of each monthly operating report filed with the Court. In addition, the EPB Debtor shall provide to U.S. Bank and the Committee no later than the 20th day of each month, a copy of the rent rolls and accounts receivable for the EPB Property as well as bank statements from any and all of the EPB Debtor's accounts for the preceding month. Further, on or before July 22, 2026, the EPB Debtor shall provide copies of all bank statements for all of the EPB Debtor's accounts for May of 2026.

(c)     Audits and Inspections. Pursuant to the terms and conditions of the Loan Documents, the EPB Debtor shall cooperate with and permit parties engaged by U.S. Bank and/or employees of U.S. Bank to visit, inspect, and have access to the EPB Debtor's books and records, the personnel of the EPB Debtor who are familiar with the EPB Debtor's books and records or the information set forth therein, the EPB Property, and such other information as U.S. Bank may reasonably request. The EPB Debtor shall keep its books and records current and updated, so that all business activities are posted to them within three (3) business days of such activity.

10

(d)      Insurance. The EPB Debtor shall at all times maintain insurance on the EPB Property as required by the EPB Loan Documents, and U.S. Bank shall receive evidence within five (5) days after demand upon the EPB Debtor, satisfactory to U.S. Bank, the EPB Property is insured as required by the EPB Loan Documents, and that U.S. Bank is named as loss payee on all insurance policies pertaining to the EPB Property. The EPB Debtor shall provide U.S. Bank copies of full insurance policies ("Policies") no later than July 10, 2026. In the event the EPB Debtor fails to provide such Policies to U.S. Bank on or before July 10, 2026, such failure shall constitute an Event of Default under this Interim Order.

(e)      Replacement Property Manager. No later than July 10, 2026, the EPB Debtor shall file an emergency motion seeking the approval of this Court to employ an independent, third-party property manager for the EPB Property (the "New Property Manager"). Approval of the New Property Manager by U.S. Bank shall be subject to the requirements set forth in in the EPB Loan Documents. The failure of the EPB Debtor to file an emergency motion seeking approval to employ a New Property Manager on or before July 10, 2026 shall be an Event of Default under this Interim Order. Upon the entry of an order approving the New Property Manager, the Lurin Manager shall be deemed to have resigned, and that certain Management and Leasing Agreement between the EPB Debtor and the Lurin Manager dated as of April 23, 2018 shall be deemed terminated as of the date of the entry of said order, with the Lurin Manager waiving any right to assert a claim for any past due amounts owed or rejection damages.

18449892

(f)     Report on Fire Damaged Units. No later than July 22, 2026, the EPB Debtor shall provide a detailed written report to U.S. Bank detailing the status of the repair of the four (4) units at the EPB Property that were damaged by a fire (the "Fire-Damaged Units"), and a detailed written report on the status of any insurance claims that have been asserted with respect to the Fire-Damaged Units.

6.     **Post-Petition Lien and Superpriority Claim**. Subject and subordinate to the Carve Out, as additional adequate protection for the interests of U.S. Bank in the EPB Property and Cash Collateral, and any diminution in value thereof during the pendency of this bankruptcy case, and in consideration of the EPB Debtor's use thereof, and the imposition of the automatic stay, the EPB Debtor grants to U.S. Bank:

(a)     Subject to the Challenge provisions in paragraph 14 herein, a replacement lien (ahead of all other liens) on, and security interest in (the "Postpetition Liens"), all assets of the EPB Debtor including the applicable real or personal property of the EPB Debtor's estate, including all rents, income and profits arising from the EPB Property, that the EPB Debtor acquired or acquires on or after the Petition Date notwithstanding 11 U.S.C. § 552(a) (collectively, the "Postpetition Collateral"); provided, however, that such Postpetition Liens shall attach only, and solely upon entry of the Final Order, to the proceeds of any claims, causes of action, rights of recovery, remedies, or powers arising under chapter 5 of the Bankruptcy Code, including, without limitation, any actions arising under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), or 724(a) of the Bankruptcy Code. Subject to entry of the Final Order, the "equities of the

18449892

case" exception under section 552(b) of the Bankruptcy Code shall not apply to U.S. Bank with respect to the Prepetition Collateral or the Postpetition Collateral;

(b)      an allowed superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code against the EPB Debtor (the "Superpriority Claim"):  (i) with respect to any funds paid or advanced by U.S. Bank to force-place any insurance coverage required by the EPB Loan Documents which the EPB Debtor permitted to lapse, and (ii) if and to the extent the Postpetition Liens are insufficient to provide adequate protection against the diminution, if any, in value of U.S. Bank's interest in any collateral resulting from the use of Cash Collateral. The Superpriority Claim shall be subject to the Carve Out but have priority over all other administrative expense claims allowed under sections 503(b) and 507(a) of the Bankruptcy Code.

7.      **Perfection of Post-Petition Liens**. The Post-Petition Liens are, and for all purposes shall be deemed to be, valid and enforceable, and no filing or recordation or other act shall be necessary to create or perfect such liens. U.S. Bank shall not be required to file financing statements, mortgages or other documents in any jurisdiction or take any other action in order to validate or perfect the respective security interests granted to it under this Interim Order and related instruments, documents and agreements. If U.S. Bank shall, in its sole discretion, choose to file such financing statements, mortgages or other documents or otherwise confirm perfection of such security interests, all such financing statements or similar documents shall be deemed to have been filed or recorded and perfected at the time and on the date of entry of this Interim Order.

13

18449892

8.     **Termination of Authorization to Use Cash Collateral**. Unless otherwise agreed in writing by the Prepetition Secured Party, or otherwise ordered by the Court, the EPB Debtor's authorization to use the Prepetition Collateral and Cash Collateral shall terminate at 11:59 p.m. prevailing central time on July 22, 2026.

9.     **Carve-Out**.     Notwithstanding anything herein to the contrary, the Prepetition Liens, Postpetition Liens, Superpriority Claim, and Adequate Protection granted to U.S. Bank shall be subject and subordinate to a carve-out (the "Carve-Out") for: (i) all fees required to be paid to the Clerk of the Court and all statutory fees payable to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, together with the statutory rate of interest; (ii) compensation for reasonable and necessary services rendered and reimbursement of reasonable and necessary expenses incurred prior to delivery of a notice of Event of Default pursuant to paragraph 16 hereof that are permitted to be paid under sections 330 or 331 of the Bankruptcy Code to counsel and advisors retained by the EPB Debtor and the Committee; provided that such professionals are retained in the Chapter 11 Case pursuant to an order of the Court and included in the Budget (collectively, the "Restructuring Professionals"), in an amount not to exceed the applicable aggregated line item amount for each Restructuring Professional as set forth in the Budget and (iii) compensation for reasonable and necessary services rendered and reimbursement of reasonable and necessary expenses incurred after delivery of a notice of Event of Default that are permitted to be paid under sections 330 or 331 of the Bankruptcy Code to Restructuring Professionals in an amount not to exceed $25,000. Notwithstanding anything herein to the contrary, no Cash Collateral, proceeds of Cash Collateral, Carve-Out, Prepetition Collateral, or Postpetition Collateral shall be used by the

14

18449892

Committee, or included in the Carve-Out for the benefit of the Committee, to assert, commence, prosecute, or support any claims, causes of action, objections, defenses, or other proceedings against the Prepetition Secured Party, including with respect to the validity, priority, extent, perfection, enforceability, or avoidance of the Prepetition Secured Party's liens or claims, or to investigate any such matters in excess of $5,000, absent the prior written consent of the Prepetition Secured Party or further order of the Court.

10.     **Escrow Account**. Except upon a termination of the EPB Debtor's authorization to use Cash Collateral as provided in paragraphs 8 and 21 hereof, the EPB Debtor shall utilize cash on hand, including Cash Collateral to the extent required, to fund, on a weekly basis, a segregated account of the EPB Debtor and not subject to the control of U.S. Bank (the "Escrow Account"), an amount equal to the amount budgeted for the Restructuring Professionals in the Budget. The Escrow Account shall not be subject to U.S. Bank's control or claims, including the Postpetition Liens and Superpriority Claim; provided that the Postpetition Liens and Superpriority Claim shall attach solely to the residual cash balance, if any, in the Escrow Account available following payment in full in cash of all allowed professional fees pursuant to a final order.

11.     **Further Assurances**. At the request of U.S. Bank, the EPB Debtor shall execute and deliver to U.S. Bank such further documents and instruments, and will do such further acts as U.S. Bank may deem advisable or necessary, to ensure that U.S. Bank is perfected in all of the rights and interests given or intended to be given to the Prepetition Secured Party under this Interim Order.

15

18449892

12. **Waiver of Marshalling**. Subject to entry of the Final Order, U.S. Bank shall not be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the Prepetition Collateral or Postpetition Collateral.

13. **Section 506(c) Surcharge Waiver**. Subject to entry of the Final Order and except to the extent of the Carve-Out, the EPB Debtor hereby waives, and shall be deemed to have waived, any right to surcharge U.S. Bank's collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise. No costs or expenses of administration of the Chapter 11 Case or any future proceeding, including any subsequent liquidation, shall be charged against or recovered from the Prepetition Secured Party, the Prepetition Collateral, or the Postpetition Collateral including, without limitation, any proceeds, product, offspring, or profits thereof, pursuant to section 506(c) of the Bankruptcy Code or otherwise, and no such claim shall be asserted against the Prepetition Secured Party.

14. **Stipulations**. The EPB Debtor stipulates and agrees in this Interim Order that: (a) the prepetition indebtedness owing to U.S. Bank under the EPB Loan Documents is valid, binding, enforceable, non-avoidable, and not subject to counterclaim, defense, setoff, recharacterization, subordination, or avoidance of any kind under the Bankruptcy Code or applicable non-bankruptcy law; (b) the liens and security interests granted to U.S. Bank under the EPB Loan Documents in the Prepetition Collateral were properly perfected, valid, enforceable, non-avoidable, and first priority liens (subject only to liens, if any, that were senior as of the Petition Date); and (c) U.S. Bank holds an allowed secured claim against the EPB Debtor, subject to any party-in-interest's right to object to the amounts set forth in any proof of claim filed by U.S. Bank. The foregoing stipulations shall be binding upon the EPB Debtor and its Estate in all circumstances, and any chapter 11 trustee, any

18449892

chapter 7 trustee, or other party seeking to bring claims or challenges on behalf of the EPB Debtor's Estate, unless a party in interest with standing (including any statutory committee appointed in this case) files an adversary proceeding challenging the validity, priority, or enforceability of U.S. Bank's liens or claims (a "Challenge") within sixty (60) days after entry of this Interim Order (the "Challenge Period"). Nothing in this paragraph shall be deemed to confer standing on any party that does not otherwise have standing under applicable law. The Challenge Period may be extended with the written consent of U.S. Bank.

15.     **Milestones: Non-Default Rate Interest Payments, Sale Order, and Ground Lease Assumption Order**. As conditions to the continued use of Cash Collateral by the EPB Debtor: (a) the EPB Debtor shall commence making monthly non-default rate interest payments in the amount required under the EPB Loan Documents on or before 90 days after the Petition Date; and (b) the EPB Debtor shall obtain the entry of final and non-appealable orders approving the sale of the EPB Property (which shall include the assumption and assignment of the Ground Lease – the "Assumption Order") on or before November 27, 2026, which approval may be contained in an order confirming a chapter 11 plan proposed by the EPB Debtor (the "Sale Order"), and such Sale Order shall require the payment of all amounts due and owing to U.S. Bank under the EPB Loan Documents within seven (7) days after entry of such Sale Order (collectively, the "Milestones"), unless otherwise agreed to in writing by U.S. Bank. U.S. Bank expressly reserves its right to credit bid any and all amounts due to U.S. Bank under the EPB Loan Documents in connection with any sale of the EPB Property, and nothing in this Interim Order shall be construed or deemed a waiver of U.S. Bank's right to credit bid.

17

16.     **Events of Default**. The EPB Debtor's failure to comply with any terms and conditions of this Interim Order, including, but not limited to the following, shall constitute an event of default hereunder ("Event of Default"):

(a)     failure to provide insurance policies when required;

(b)     failure to make any payment required under this Interim Order when due, including, without limitation, the Interim Adequate Protection Payment;

(c)     failure to comply with the budget variance limits set forth herein;

(d)     failure to provide financial reporting required under this Interim Order;

(e)     failure to maintain insurance or pay taxes when due;

(f)     failure to adhere to a Milestone;

(g)     use of Cash Collateral for any purpose not authorized by this Interim Order; or;

(h)     dismissal or conversion of the Chapter 11 Case.

17.     **Default Notice and Cure**. Upon the occurrence of any Event of Default, U.S. Bank shall provide the EPB Debtor, the EPB Debtor's counsel, and the Committee's counsel written notice of such Event of Default (which such notice may be accomplished by email, facsimile, and/or overnight delivery). Notice shall be deemed received by the EPB Debtor, the EPB Debtor's counsel and the Committee's counsel if sent to the following:

**Debtor's Counsel:**

PORTER HEDGES LLP
Joshua W. Wolfshohl
Aaron J. Power
M. Shane Johnson

18449892

Megan Young-John
James A. Keefe
jwolfshohl@porterhedges.com
apower@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
jkeefe@porterhedges.com

**Debtors:**
Lurin Real Estate Holdings VI, LLC
Jon P. Venetos
4550 Travis Street, Suite 401
Dallas, Texas 75205
jvenetos@lurin.com

**Committee's Counsel:**
PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler
Robert Feinstein
Maxim Litvak
Steven W. Golden
bsandler@pszjlaw.com
rfeinstein@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

If the EPB Debtor has failed to fully and completely cure any such Event of Default within three (3) business days after receipt of notice of the Event of Default by the EPB Debtor and the EPB Debtor's counsel, then without any further act, notice or action by U.S. Bank or any further notice, hearing, act or order of this Court, the EPB Debtor's authority to use Cash Collateral and any and all obligations of U.S. Bank under this Interim Order shall terminate.

18. **Stay Relief Hearing Upon Uncured Event of Default**. In the event that the EPB Debtor has failed to fully and completely cure an Event of Default within three (3) business days after receipt of notice of the Event of Default by the EPB Debtor and the

18449892

EPB Debtor's counsel, on motion and within five (5) calendar days' notice, U.S. Bank shall be entitled to an expedited hearing for relief from the automatic stay.

19.     **Stay Relief on Milestone Default**. Notwithstanding anything herein to the contrary, if the EPB Debtor fails to comply with any Milestone set forth in paragraph 15 of this Interim Order, U.S. Bank may file a motion seeking relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code to permit U.S. Bank to exercise any and all rights and remedies available to U.S. Bank under the EPB Loan Documents and applicable law, including, without limitation, the appointment of a receiver and/or foreclosure of the EPB Property.

20.     **No Waiver of Event of Default**. U.S. Bank's failure to provide written notice of an Event of Default shall in no way be deemed a waiver of U.S. Bank's rights or remedies under this Interim Order or other applicable provisions of the Bankruptcy Code.

21.     **Termination of Right to Use Cash Collateral**. Upon the termination of the authorization to use Cash Collateral for any reason, including an Event of Default, the EPB Debtor shall immediately cease use of or disbursement of the Cash Collateral and Postpetition Collateral from the DIP Account, including, without limitation, any transfers to the Escrow Account on account of professional fees; provided that the EPB Debtor shall still be authorized to make disbursements from the Escrow Account to pay Restructuring Professionals amounts incurred prior to termination of the authorization to use Cash Collateral. Notwithstanding the foregoing, and solely to the extent of the Carve-Out, the EPB Debtor may, after such termination, transfer to the Escrow Account an aggregate amount not to exceed $25,000 solely for the payment of professional fees, provided no further amounts shall be transferred or disbursed for any purpose absent the prior written

18449892

consent of U.S. Bank. The EPB Debtor shall continue to deposit receipts into the DIP Account but the account shall otherwise be frozen, except for amounts in the Carve-Out, pending written agreement of the EPB Debtor and U.S. Bank or order of this Court, which may be sought by any party on an expedited basis.

22.     **No Additional Liens**. Except for the liens, mortgages and security interests granted to U.S. Bank and except as may be agreed to by U.S. Bank, the EPB Debtor shall not cause, permit or consent to any liens, mortgages, or security interests to encumber any or all of the EPB Property or Cash Collateral.

23.     **U.S. Bank's Reservation of Rights**. U.S. Bank reserves all rights to seek additional forms of adequate protection in any supplemental order conditioning the use of Cash Collateral, including, without limitation, adequate protection payments, releases, waivers, stipulations, findings and related relief customarily granted on a final basis after an appropriate period of review to secured lenders in exchange for the use of cash collateral. Nothing herein shall be construed to be a waiver or admission by U.S. Bank that will otherwise affect or prejudice U.S. Bank's right to seek further relief, including, but not limited to, the right of U.S. Bank at any time to seek (a) the appointment of a trustee in this Chapter 11 Case, (b) relief from the automatic stay for any reason, including under Bankruptcy Code section 362(d)(3), (c) dismissal or conversion of this Chapter 11 Case, or (d) any other relief. This Interim Order is without prejudice to the rights of the EPB Debtor and/or U.S. Bank to seek, after notice and hearing, any modification in this Interim Order.

24.     **No Substantive Consolidation**. Notwithstanding anything in this Interim Order to the contrary, and notwithstanding the joint administration of the case of the EPB

18449892

Debtor with certain other Chapter 11 cases for procedural purposes only, nothing contained in this Interim Order, the Motion, or any actions taken pursuant hereto shall constitute, evidence, or be deemed to permit or effectuate the substantive consolidation of the estates, assets, liabilities, or obligations of the EPB Debtor with those of the other debtor or any non-debtor entity. The rights, claims, interests, assets, liabilities, and obligations of each Debtor identified in any administrative consolidation order shall remain separate and distinct, and no provision of this Interim Order shall be construed to authorize the pooling of assets or liabilities, the recharacterization of intercompany relationships, or the treatment of any of the EPB Debtor's assets as property of another estate absent further order of the Court after notice and hearing.

26.     **Service of Pleadings**. The EPB Debtor shall cause to be served on counsel for U.S. Bank copies of all pleadings, substantive motions, notices, proposed orders, or other papers filed by the EPB Debtor in this Chapter 11 Case.

26.     **Value of Collateral**. The terms of this Interim Order shall not constitute conclusive or presumptive evidence concerning the issues of value of collateral or adequate protection.

27.     **Lender Liability Protection**. In taking any action related to this Interim Order or in connection with the enforcement of any of the rights granted herein, U.S. Bank shall have no liability to any third party (including pre and postpetition creditors of the EPB Debtor), and shall not be deemed to be in control of the operations of the EPB Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the EPB Debtor.

18449892

28. **Certain EPB Debtor and U.S. Bank Rights Preserved**. Other than as expressly set forth in this Interim Order, any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the EPB Debtor and U.S. Bank are preserved. Nothing contained herein shall be deemed to be a finding by this Court or an acknowledgement by U.S. Bank that the adequate protection granted herein does in fact adequately protect U.S. Bank's purported interests on a final basis. For the avoidance of doubt, nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any prepetition claims against the EPB Debtor; (ii) a waiver of the EPB Debtor's or any other party in interest's rights to dispute any prepetition claim on any grounds; (iii) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion; (iv) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (v) a waiver of the EPB Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law. Additionally, all findings of fact, conclusions of law, and relief granted in this Interim Order shall in all respects be subject to reconsideration de novo at a final hearing on the Motion.

29. **Automatic Stay Modification**. The automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary is modified to implement and effectuate the terms of this Interim Order.

30. **No Third-Party Rights**. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

18449892

31. **Retention of Jurisdiction**. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

32. **Sufficient Notice of Motion**. The notice given by the EPB Debtor of the Motion constitutes due and sufficient notice.

33. **Final Cash Collateral Hearing**. A final hearing to consider the relief requested in the Motion on a final basis shall be held on July 21, 2026, at 4:00 PM (prevailing Central time). The deadline to object to entry of the final order shall be July 14, 2026, at 5:00 p.m. (prevailing Central time).

34. **Notice of Final Cash Collateral Hearing**. Within three (3) business days after entry of this Interim Order, the EPB Debtor shall serve, or cause to be served, a copy of this Interim Order, by first class mail, electronic transmission, or other appropriate method of service on the Notice Parties. If no objections to the Motion are filed, this Court may enter a final order without further notice or hearing.

Signed: July 01, 2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

18449892

## Exhibit A - The EPB Property

Lessee's interest in that certain Department of Air Force Lease of Federal Land by and between the Secretary of the Air Force, and Fort Walton Defense Housing Corporation, recorded in Official Records Book 1629, Page 1909; as affected by the Assignment of Lease of Federal Land in favor of Fort Walton Defense Housing, LTD, a Florida limited partnership recorded in Official Records Book 1629, Page 1939; Novation Agreement recorded in Official Records Book 1629, Page 1943; Agreement to Lease recorded in Official Records Book 1630, Page 397; Assignment of Lease of Federal Land to LURIN REAL ESTATE HOLDINGS VI, LLC, a Delaware limited liability company as recorded in Official Records Book 3389, Page 3092; Memorandum of Lease of Property by and between The United States of America, acting by and through the Secretary of the Air Force "Government" and LURIN REAL ESTATE HOLDINGS VI, LLC, a Delaware limited liability company, recorded in Official Records Book 3389, Page 3131, and Memorandum of First Amendment to Lease of Property recorded in Official Records Book 3626, Page 4542, of the Public Records of Okaloosa County, Florida, demising the following described Land:

A portion of land located in Section 4, Township 2 South, Range 24 West, Okaloosa County, Florida and being more particularly described as follows:

From a concrete monument marking the Southeast corner of the Southwest 1/4 of said Section 4, Township 2 South, Range 24 West; thence N 02°00'18" East along the quarter-section line a distance of 1400.00 feet to the Point of Beginning; thence continue on the previous bearing (N 02°00'18" East) a distance of 1450.00 feet to a capped rod; thence N 88°36'54" W a distance of 42.26 feet to a capped rod; thence N 68°36'54" W a distance of 1,068.97 feet to a capped rod on the Southeast right of way line of Hurlburt Field Road; thence S 57°20'01" W along said right of way line a distance of 911.13 feet to a point; thence S 02°00'18" W a distance of 1285.97 feet to a point; thence S 87°59'42" E a distance of 1,800.00 feet to the Point of Beginning.

TOGETHER WITH those appurtenant easements described in the Easement by and between Ray Gibson and Fort Walton Defense Housing, LTD. Recorded in Official Records Book 1620, Page 903, of the Public Records of Okaloosa County, Florida.

TOGETHER WITH:

ALL OF THE DEBTOR'S RIGHT, TITLE AND INTEREST, WHETHER NOW EXISTING OR HEREAFTER ACQUIRED, IN AND TO ALL ASSETS AND/OR PERSONAL PROPERTY OF DEBTOR, WHEREVER LOCATED AND THE PROCEEDS AND PRODUCTS, WHETHER TANGIBLE OR INTANGIBLE, THEREOF.

ALL ASSETS OF THE DEBTOR, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, AND THE PROCEEDS THEREOF, WHICH ARE OR WILL BECOME

18449892

"FIXTURES" AS SUCH TERM IS DEFINED UNDER THE UNIFORM COMMERCIAL CODE UPON THE REAL PROPERTY DESCRIBED HEREIN.

18449892

# EXHIBIT B

**Lurin Real Estate Holdings VI, LLC - Estates at Palm Bay**

**Cash Collateral Budget**

($ in 000s)

| | Act | Fct | Fct | Fct | Fct | Fct | Fct | Fct | Fct | Fct | Fct | Fct | Fct | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual / Forecast: | | | | | | | | | | | | | | |
| Forecast Week: | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 1-13 |
| Week End Date: | 19-Jun | 26-Jun | 3-Jul | 10-Jul | 17-Jul | 24-Jul | 31-Jul | 7-Aug | 14-Aug | 21-Aug | 28-Aug | 4-Sep | 11-Sep | 11-Sep |
| **Operating Receipts** | $ 23 | $ 23 | $ 228 | $ 91 | $ 91 | $ 23 | $ 23 | $ 387 | $ 23 | $ 23 | $ 23 | $ 387 | $ 23 | $ 1,366 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll & Related | - | (22) | - | (22) | - | (22) | - | (22) | - | (22) | - | (22) | - | (134) |
| Administrative | (3) | (3) | (42) | (3) | (3) | (3) | (42) | (3) | (3) | (3) | (3) | (42) | (3) | (151) |
| Marketing | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (16) |
| Other Controllable | (33) | (33) | (33) | (33) | (33) | (33) | (33) | (32) | (32) | (32) | (32) | (32) | (32) | (424) |
| Management Fees | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (56) |
| Insurance Premiums | - | (57) | - | - | - | (57) | - | - | - | (57) | - | - | - | (171) |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ (41) | $ (120) | $ (80) | $ (63) | $ (41) | $ (120) | $ (80) | $ (63) | $ (41) | $ (120) | $ (41) | $ (102) | $ (41) | $ (951) |
| **Operating Cash Flow** | $ (18) | $ (97) | $ 148 | $ 28 | $ 50 | $ (97) | $ (57) | $ 324 | $ (18) | $ (97) | $ (18) | $ 285 | $ (18) | $ 415 |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Adequate Protection [2] | - | - | - | - | - | - | - | - | - | - | - | (333) | - | (333) |
| Adequate Assurance | (11) | - | - | - | - | - | - | - | - | - | - | - | - | (11) |
| Critical Vendor Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs | - | - | - | - | - | - | (2) | - | - | - | - | - | - | (2) |
| Debtor Professionals | (50) | (17) | (17) | (17) | (17) | (17) | (17) | (15) | (15) | (15) | (15) | (15) | (15) | (237) |
| UCC Professionals | (17) | (6) | (6) | (6) | (6) | (6) | (6) | (5) | (5) | (5) | (5) | (5) | (5) | (79) |
| Capital Expenditures | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating** | $ (78) | $ (22) | $ (22) | $ (22) | $ (22) | $ (22) | $ (24) | $ (19) | $ (19) | $ (19) | $ (19) | $ (352) | $ (19) | $ (662) |
| **Net Cash Flow** | $ (96) | $ (120) | $ 126 | $ 6 | $ 28 | $ (120) | $ (81) | $ 305 | $ (37) | $ (116) | $ (37) | $ (67) | $ (37) | $ (247) |
| Beginning Cash (Bank) [1] | $ - | $ (96) | $ (216) | $ (90) | $ (85) | $ (57) | $ (176) | $ (257) | $ 47 | $ 10 | $ (106) | $ (143) | $ (210) | $ - |
| Net Cash Flow | (96) | (120) | 126 | 6 | 28 | (120) | (81) | 305 | (37) | (116) | (37) | (67) | (37) | (247) |
| **Ending Cash (Bank)** | $ (96) | $ (216) | $ (90) | $ (85) | $ (57) | $ (176) | $ (257) | $ 47 | $ 10 | $ (106) | $ (143) | $ (210) | $ (247) | $ (247) |

**Notes**

1 Beginning cash balance reflects management's estimate based on the last known account balance and estimated activity through the forecast start date.

The Debtors do not currently have access to the bank accounts. Actual cash may differ.